**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

EVAN WANG, and
JUNYI XIONG,
individuals,

       Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A.,
a national association, and
EQUIFAX INFORMATION
SERVICES LLC,
a foreign limited liability company,
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation, and
TRANS UNION LLC,
a foreign limited liability company,

       Defendants.

_____/

Case No.:

**PLAINTIFFS' NOTICE OF LEAD COUNSEL DESIGNATION**

Plaintiffs, EVAN WANG and JUNYI XIONG, by and through the undersigned counsel, pursuant to Middle District of Florida Local Rule 2.02(a), hereby designate Aaron M. Swift, Esq. as Lead Counsel for Plaintiffs.

**COMPLAINT**

**COME NOW**, Plaintiffs, EVAN WANG (hereinafter, "Mr. Wang") and JUNYI XIONG (hereinafter, "Ms. Xiong") (hereinafter collectively, "Plaintiffs"), by and through the undersigned counsel, and hereby file this Complaint against

1

Defendants, JPMORGAN CHASE BANK, N.A. (hereinafter, "Chase"), EQUIFAX INFORMATION SERVICES LLC (hereinafter, "Equifax"), EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter, "Experian"), and TRANS UNION LLC (hereinafter, "Trans Union") (hereinafter collectively, "Defendants"). In support thereof, Plaintiffs state:

### PRELIMINARY STATEMENT

1.      This is an action brought by individual consumers for damages for Chase's violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq*. (hereinafter, the "FCRA") wherein Chase improperly credit-reported and subsequently improperly verified its credit reporting of alleged past-due payment information for Plaintiffs' mortgage account in Plaintiff's consumer credit file as maintained by Equifax, Experian, and Trans Union.  More specifically, despite Plaintiffs and Chase entering into a forbearance agreement and Plaintiffs complying with all instruction from Chase, Chase reported Plaintiffs' mortgage account as past-due in the month of May 2025 when Plaintiffs were in fact current on such account, and after Plaintiffs disputed Chase's reporting of such erroneous information directly to Equifax, Experian, and Trans Union—Chase *continued* to report such account with as past-due in the month of May 2025.

2.      Furthermore, this is an action for damages for Equifax's, Experian's, and Trans Union's violations of the FCRA wherein Equifax, Experian, and Trans Union each continued to incorrectly report Plaintiffs as 120 or 180 days past-due on their

mortgage account in the month of May 2025 after Plaintiff disputed and Defendants also failed to mark the disputed account as disputed.

## JURISDICTION, VENUE & PARTIES

3.    Jurisdiction of this Court arises under 28 United States Code, Section 1331, pursuant to the FCRA, 15 United States Code Section 1681, et seq.

4.    Defendants are subject to the jurisdiction of this Court as Defendants each regularly transact business in this District.

5.    Venue is proper in this District as the acts and transactions described herein occur in this District.

6.    At all material times herein, Plaintiffs are each a natural person residing in Hillsborough County, Florida.

7.    At all material times herein, Chase is a national association with its principal place of business located at 111 Polaris Parkway, Columbus, Ohio 43240.

8.    At all material times herein, Equifax is a foreign limited liability company existing under the laws of the state of Georgia, with its principal place of business located at 1550 W Peachtree Street, Atlanta, Georgia 30309.

9.    At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

10.    At all material times herein, Trans Union is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

## FCRA STATUTORY STRUCTURE

11.    Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

12.    Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

13.    Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge—and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute.  *Id.* at § i(a).

14.    Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer.  *Id.* at § i(a)(4).

15.    Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete,

or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation. *Id.* at § i(a)(5).

16.    Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. *Id.* at § s-2(b).

17.    Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

18.    Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer

as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## **GENERAL ALLEGATIONS**

19.    At all material times herein, Plaintiffs are each an alleged "consumer" as defined by the FCRA, Section 1681a(c) because they are each an individual and allegedly obligated to pay a debt.

20.    At all material times herein, Chase, itself and through its subsidiaries, regularly extends mortgage loans—and credit reports debts associated with the same— allegedly owed by consumers residing in Hillsborough County, Florida.

21.    At all material times herein, Chase furnishes information to Equifax, Experian, and Trans Union concerning an alleged past-due mortgage account referenced by account number ending -9297 (hereinafter, the "Account").

22.    At all material times herein, Chase is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

23.    At all material times herein, Equifax, Experian, and Trans Union are each a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports. Equifax, Experian, and Trans Union each disburse such consumer reports to third parties under contract for monetary compensation.

24.    At all material times herein, Defendants act themselves or through their

6

agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

25.     All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

26.     In or around January 2020, Plaintiffs opened the mortgage Account with Chase Mortgage, a/k/a JPMorgan Chase Bank Home Lending ("Chase").

27.     In or around October 2024, Plaintiffs experienced economic hardship due to a declared natural disaster in Florida, more specifically, from recent hurricanes.

28.     In or around October 2024, Plaintiffs called Chase and advised Plaintiff could not afford to make their upcoming mortgage payments due to recent hurricanes in Plaintiffs' area.

29.     In response, Chase advised that Plaintiffs qualified for disaster relief forbearance and Chase placed the mortgage Account in forbearance.

30.     Importantly, Chase advised that the disaster relief forbearance would not negatively impact Plaintiffs' credit scores or credit ratings.

31.     Between October 2024 and February 2025, Plaintiffs spoke with Chase by telephone at least once each month wherein Plaintiffs advised they still could not afford to make their monthly mortgage payments.  Each time, Chase extended the forbearance on the Account for thirty (30) days.

32.     In February 2025 and/or March 2025, Plaintiffs called and spoke with Chase by telephone.  During the call, Plaintiffs advised they were able to resume their

regular monthly mortgage payments in April 2025.

33. In response, Chase advised that the payments originally owed during the forbearance period would be deferred to the end of the loan and Chase also advised that Plaintiffs' autopay will automatically resume when Chase finalizes the deferment.

34. Plaintiffs received written communications from Chase dated in March 2025 and April 2025 advising that Plaintiffs' mortgage assistance application was complete.

35. In March 2025, during phone calls with Chase, Chase confirmed that Plaintiffs were approved to defer the missed forbearance-period payment to the end of the loan.

36. Additionally, in March 2025 and thereafter, Chase instructed Plaintiffs to *not* pay the balance that accrued during the disaster forbearance period. Instead, Chase instructed Plaintiffs to resume the regular monthly payments moving forward with a slight increase in the monthly payment amount to cover a projected escrow account deficiency.

37. Upon information and belief, the Account forbearance relief ended on March 31, 2025.

38. Subsequently, Plaintiffs obtained copies of their credit reports from Equifax, Experian, and Trans Union.

39. Despite Chase placing the mortgage Account in disaster relief forbearance and despite Chase approving Plaintiffs' mortgage assistance application

to defer the forbearance payments to the end of the loan, Chase, Equifax, Experian, and Trans Union reported the Account as either 120 or 180 days late for the month of May 2025 without reporting any other balance or payment information.

40.     Additionally, Chase reported the Account as "OK" for the month of June 2025 without reporting any other balance or payment information.

41.     Notably, Defendants were not reporting *any* data on the Account from December 2024 to April 2025 which is incomplete and inaccurate.

42.     Accurate and complete reporting would show the Account in disaster relief forbearance from October 2024 to March 2025 at minimum.

43.     Further, Chase's reporting of the Account does not reflect a past-due balance before or after May 2025, and therefore, Plaintiffs could not possibly be 120 or 180 days late in May 2025.

44.     On or about January 27, 2026, and with the assistance of their attorneys, Plaintiffs sent a letter to Equifax, Experian, and Trans Union disputing Defendants reporting of the Account as 120 or 180 days late in May 2025 (hereinafter, Plaintiffs' "First Dispute").

45.     Plaintiffs' First Dispute requested that Defendants mark the Account as disputed by Plaintiffs.

46.     Plaintiffs' First Dispute also clearly advised that an attorney helped Plaintiffs prepare the First Dispute letter and it was authorized by Plaintiffs.

47.     Equifax received Plaintiffs' First Dispute.

48.     Equifax communicated Plaintiffs' First Dispute to Chase.

49. Chase received notice of Plaintiffs' First Dispute from Equifax.

50. Experian received Plaintiffs' First Dispute.

51. Experian did not communicate Plaintiffs' First Dispute to Chase.

52. Experian did not conduct an investigation or re-investigation in response to Plaintiffs' First Dispute.

53. Experian did not send Plaintiffs any dispute results in response to Plaintiffs' First Dispute.

54. Trans Union received Plaintiffs' First Dispute.

55. On or about February 14, 2026, Trans Union sent post-cards to Plaintiffs in response to Plaintiffs' dispute which advised that Trans Union believed the dispute letter did not come from Plaintiffs or otherwise was not authorized by Plaintiffs.

56. To be clear, Plaintiffs each signed the First Dispute letter and authorized their attorneys to mail the First Dispute to Equifax, Experian, and Trans Union.

57. Trans Union did not communicate Plaintiffs' First Dispute to Chase.

58. Trans Union did not conduct an investigation or re-investigation in response to Plaintiffs' First Dispute.

59. Trans Union did not send Plaintiffs any dispute results in response to Plaintiffs' First Dispute.

60. On or about February 20, 2026, Equifax sent dispute results to Plaintiffs wherein Equifax asserted it "verified" its reporting with Chase and continued to report the Account as 180 days late in May 2025.

61. Equifax also failed to mark the Account as disputed by Plaintiffs.

62. Plaintiffs did not receive any dispute results from Experian or Trans Union regarding Plaintiffs' First Dispute.

63. On or about March 18, 2026, and because Plaintiffs did not receive dispute results from Experian or Trans Union, Plaintiffs obtained copies of their Experian and Trans Union credit reports.

64. Despite Plaintiffs' First Dispute previous dispute, Experian and Chase were *still* reporting the Account as 180 days late in May 2025.

65. While Experian marked the Account as disputed by Ms. Xiong, Experian did *not* mark the Account as disputed by Mr. Wang.

66. Similarly, Trans Union and Chase were *still* reporting the Account as 120 days late in May 2025 and Trans Union failed to mark the Account as disputed by Plaintiffs.

67. On or about March 23, 2026, Plaintiffs sent *another* letter to Equifax, Experian, and Trans Union wherein Plaintiffs *again* advised that an attorney helped Plaintiffs prepare the dispute letter but it was authorized by Plaintiffs, *again* disputed Defendants reporting of the Account as past-due in May 2025, and advised that Defendants were still failing to mark the Account as disputed by Plaintiffs (hereinafter, "Second Dispute").

68. Equifax received Plaintiffs' Second Dispute.

69. Equifax communicated Plaintiffs' Second Dispute to Chase.

70. Chase received notice of Plaintiffs' Second Dispute from Equifax.

71. Experian received Plaintiffs' Second Dispute.

72.   Experian communicated Plaintiffs' Second Dispute to Chase.

73.   Chase received notice of Plaintiffs' Second Dispute from Experian.

74.   Trans Union received Plaintiffs' Second Dispute.

75.   Trans Union communicated Plaintiffs' Second Dispute to Chase.

76.   Chase received notice of Plaintiffs' Second Dispute from Trans Union.

77.   On or about April 13, 2026, Equifax sent dispute results to Plaintiffs in response to Plaintiffs' Second Dispute.

78.   Yet again, Equifax and Chase purportedly verified their reporting of the Account as 180 days late in May 2025 and *still* failed to mark the Account as disputed by Plaintiffs.

79.   On or about April 17, 2026, Trans Union sent dispute results to Plaintiffs in response to Plaintiffs' Second Dispute.

80.   Yet again, Trans Union and Chase purportedly verified their reporting of the Account as 120 days late in May 2025 and *still* failed to mark the Account as disputed by Plaintiffs.

81.   On or about April 27, 2026, Experian sent dispute results to Ms. Xiong in response to Plaintiffs' Second Dispute.

82.   Yet again, Experian and Chase purportedly verified their reporting of the Account as 180 days late in May 2025.

83.   Similarly, on or about May 17, 2026, Experian sent dispute results to Mr. Wang in response to Plaintiffs' Second Dispute.

84.   Yet again, Experian and Chase purportedly verified their reporting of the

12

Account as 180 days late in May 2025.

85.    Despite Plaintiff's repeated disputes, Equifax, Experian, and Trans Union each failed to request documents from Chase in support of Chase's reporting of the Account.

86.    Defendants' reporting of the Chase mortgage Account as past-due in May 2025 is false and/or materially misleading because Chase agreed that any amounts owed during the disaster forbearance period would be added to the end of the loan term, Chase assured Plaintiffs that their automatic payments would resume after Chase finished processing Plaintiffs' mortgage assistance application, and Chase assured Plaintiffs that the forbearance would not result in any derogatory credit reporting.

87.    Further, Defendants' failure to mark the Account as disputed by Plaintiffs is incomplete, inaccurate, and/or materially misleading because Plaintiffs repeatedly disputed Defendants reporting and demanded that Defendants mark such Account as disputed.

88.    After Plaintiffs' First Dispute, Defendants prepared and published Plaintiff's credit information to Plaintiffs' current creditors and potential lenders which included the Account with late payment information resulting in the Account appearing as a derogatory account on Plaintiffs' credit reports and negatively impacting Plaintiffs' credit scores.

## DAMAGES

89.    As a result of Defendants' reporting of the Account, Plaintiffs have been

13

denied credit.

90.    Additionally, as a result of Defendants' reporting of the Account as past-due, Plaintiffs dealt with the stress and anxiety of feeling hopeless, believing that they would be denied credit as a result of the erroneous and incorrect reporting of the Account asserted as past due in May 2025, and that Plaintiffs would either be denied credit or pay higher interest rates in the event they could obtain financing.

91.    Overall, Plaintiffs suffered damage to their credit reputation as a result of Defendants' conduct, Defendants defamed Plaintiffs credit worthiness as well as Plaintiffs' personal character, and Defendants unfairly discriminated against Plaintiffs by ignoring—or failing to reasonably review—Plaintiffs' repeated disputes.

92.    Further, as a result of Defendants' actions, Plaintiffs suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiffs' exhaustive efforts to convey to Defendants that the Account was in forbearance and never should have been reported as late or past-due, Plaintiffs must simply endure Defendants' reporting of the Account.

93.    Plaintiffs retained Swift Law, PLLC for the purpose of pursuing this matter against Defendants, and Plaintiffs are obligated to pay their attorneys a reasonable fee for their services.

**COUNT ONE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)**
**(As to Chase Only)**

Plaintiffs re-allege paragraphs one (1) through ninety-three (93) as if fully

restated herein and further state as follows:

94.    Chase is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate, incomplete, and/or materially misleading trade-line information within Plaintiffs' credit reports, failing to fully and properly re-investigate Plaintiffs' disputes, failing to review all relevant information regarding the same, and failing to request that Equifax, Experian, and TransUnion update their reporting of the Account to remove the late payment notation from May 2025 after re-investigating Plaintiffs' repeated disputes.

95.    More specifically and as described above, Plaintiffs and Chase entered into a disaster forbearance agreement in October 2024 after Plaintiffs were impacted by a natural disaster, Chase agreed that any amounts owed during the disaster forbearance period would be added to the end of the loan term, Chase assured Plaintiffs that their automatic payments would resume after Chase finished processing Plaintiffs' mortgage assistance application, and Chase assured Plaintiffs that the forbearance would not result in any derogatory credit reporting.

96.    Upon information and belief, the Account forbearance relief ended on March 31, 2025.

97.    Subsequently, Plaintiffs obtained copies of their credit reports from Equifax, Experian, and Trans Union.

98.    Despite Chase placing the mortgage Account in disaster relief forbearance and despite Chase approving Plaintiffs' mortgage assistance application to defer the forbearance payments to the end of the loan, Chase reported the Account

to Equifax, Experian, and Trans Union as either 120 or 180 days late for the month of May 2025 without reporting any other balance or payment information.

99.   Additionally, Chase reported the Account as "OK" for the month of June 2025 without reporting any other balance or payment information.

100.   Notably, Defendants were not reporting *any* data on the Account from December 2024 to April 2025 which is incomplete and inaccurate.

101.   Accurate and complete reporting would show the Account in disaster relief forbearance from October 2024 to March 2025 at minimum.

102.   Further, Chase's reporting of the Account does not reflect a past-due balance before or after May 2025, and therefore, Plaintiffs could not possibly be 120 or 180 days late in May 2025.

103.   Between January 2026 and March 2026, Plaintiffs repeatedly disputed Chase's reporting to Equifax, Experian, and Trans Union, wherein Plaintiffs advised they entered into the disaster forbearance and should not be reported as 120 or 180 days late in May 2025.

104.   Chase received notice of Plaintiffs' repeated disputes from Equifax, Experian, and Trans Union.

105.   In response to Plaintiffs' repeated disputes, Chase did not update the Account to show as OK for the month of May 2025.

106.   Instead, Chase wrongfully "verified" its reporting of the Account as either 120 days or 180 days past-due as of May 2025.

107.   Chase's refusal to request that Equifax, Experian, and Trans Union

16

update their reporting of the Account as Plaintiffs requested was intentionally, willfully, and knowingly done as Chase clearly possessed knowledge that Chase placed the mortgage Account in disaster relief forbearance and Chase approved Plaintiffs' mortgage assistance application to defer the forbearance period payments to the end of the loan.

108. Chase's re-investigations were not conducted in good faith.

109. Chase's re-investigations were not conducted reasonably.

110. Chase's re-investigations were not conducted using all information and documents reasonably available to Chase.

111. As a result of Chase's conduct, actions, and inactions, Plaintiffs were denied credit, suffered damage to their credit reputations and credit worthiness, were deterred from making further credit applications as they believed they would not be able to obtain favorable credit terms as a result of Chase's derogatory and continued reporting of the Account, did not wish to further damage their credit score with futile credit inquires, and Plaintiffs were each continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse account.

112. Chase's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiffs as stated herein.

113. Chase's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles

17

Plaintiffs to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT TWO:
FAIR CREDIT REPORTING ACT –
VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)**
(As to Equifax, Experian, and Trans Union)

Plaintiffs re-allege paragraphs one (1) through ninety-three (93) as if fully restated herein and further state as follows:

114. Equifax, Experian, and Trans Union are each subject to, and each violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiffs.

115. Equifax, Experian, and Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports with respect to the Account.

116. Specifically, Plaintiffs and Chase entered into a disaster forbearance agreement in October 2024 after Plaintiffs were impacted by a natural disaster, Chase agreed that any amounts owed during the disaster forbearance period would be added to the end of the loan term, Chase assured Plaintiffs that their automatic payments would resume after Chase finished processing Plaintiffs' mortgage assistance application, and Chase assured Plaintiffs that the forbearance would not result in any

derogatory credit reporting.

117. Subsequently, Plaintiffs obtained copies of their credit reports from Equifax, Experian, and Trans Union.

118. Despite Chase placing the mortgage Account in disaster relief forbearance and despite Chase approving Plaintiffs' mortgage assistance application to defer the forbearance payments to the end of the loan, Chase reported the Account to Equifax, Experian, and Trans Union as either 120 or 180 days late for the month of May 2025 without reporting any other balance or payment information.

119. Additionally, Defendants reported the Account as "OK" for the month of June 2025 without reporting any other balance or payment information.

120. Notably, Defendants were not reporting *any* data on the Account from December 2024 to April 2025 which is incomplete and inaccurate.

121. Accurate and complete reporting would show the Account in disaster relief forbearance from October 2024 to March 2025 at minimum.

122. Further, Defendants' reporting of the Account did not reflect a past-due balance before or after May 2025, and therefore, Plaintiffs could not possibly be 120 or 180 days late in May 2025.

123. Between January 2026 and March 2026, Plaintiffs repeatedly disputed Equifax's, Experian's, and Trans Union's reporting of the Account, wherein Plaintiffs advised they entered into the disaster forbearance and should not be reported as 120 or 180 days late in May 2025.

124. Despite Plaintiffs *repeatedly* advising Equifax, Experian, and Trans Union

that Plaintiffs were not late on the Account as of May 2025, Experian, Equifax, and TransUnion each continued to report the Account as past-due in May 2025, resulting in the Account being reported as a derogatory, negative, or adverse account in Plaintiffs' credit reports and credit files.

125. Further, Experian, Equifax, and Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiffs' credit reports and credit files when re-investigating Plaintiffs' disputes of the above-referenced inaccuracies contained in their Experian, Equifax, and TransUnion credit reports and credit files.

126. For example, despite Plaintiff's repeated disputes, Equifax, Experian, and Trans Union each failed to request documents from Chase in support of Chase's reporting of the Account.

127. Despite Plaintiffs notifying Equifax, Experian, and Trans Union of their reporting errors and providing documents in support of their disputes, Equifax, Experian, and Trans Union each continued to report the Account as past-due in and each subsequently published Plaintiffs' credit reports to Plaintiffs' current creditors and/or potential future creditors including the past-due Account.

128. As a result of Equifax's, Experian's, and Trans Union's conduct, actions, and inactions, Plaintiffs were denied credit, suffered damage to their credit reputations and credit worthiness, were deterred from making further credit applications as they believed they would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to

further damage their credit score with futile credit inquires, and Plaintiffs were each continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

129. Equifax's, Experian's, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiffs as stated herein.

130. Equifax's, Experian's, and Trans Union's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiffs to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT THREE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i** *et seq.*
**(As to Equifax, Experian, and Trans Union)**

Plaintiffs re-allege paragraphs one (1) through ninety-three (93) as if fully restated herein and further state as follows:

131. Experian, Equifax, and Trans Union are each subject to, and each violated the provisions of, 15 United States Code, Section: 1681i(a)(1), by failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; 1681i(a)(4), by

failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; and 1681i(a)(5) by failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

132. Specifically, Equifax, Experian, and Trans Union each willfully and/or negligently refused to properly re-investigate Plaintiffs' consumer reports upon receiving Plaintiffs' disputes, as described herein.

133. Overall, Plaintiffs' repeated disputes provided Equifax, Experian, and Trans Union with sufficient information allowing Equifax, Experian, and Trans Union to identify that the alleged past-due status on the Account as of May 2025 was inaccurate, incomplete, and/or materially misleading.

134. Plaintiffs and Chase entered into a disaster forbearance agreement in October 2024 after Plaintiffs were impacted by a natural disaster, Chase agreed that any amounts owed during the disaster forbearance period would be added to the end of the loan term, Chase assured Plaintiffs that their automatic payments would resume after Chase finished processing Plaintiffs' mortgage assistance application, and Chase assured Plaintiffs that the forbearance would not result in any derogatory credit reporting.

135. Subsequently, Plaintiffs obtained copies of their credit reports from Equifax, Experian, and Trans Union.

136. Despite Chase placing the mortgage Account in disaster relief forbearance and despite Chase approving Plaintiffs' mortgage assistance application

to defer the forbearance payments to the end of the loan, Chase reported the Account to Equifax, Experian, and Trans Union as either 120 or 180 days late for the month of May 2025 without reporting any other balance or payment information.

137.    Additionally, Defendants reported the Account as "OK" for the month of June 2025 without reporting any other balance or payment information.

138.    Notably, Defendants were not reporting *any* data on the Account from December 2024 to April 2025 which is incomplete and inaccurate.

139.    Accurate and complete reporting would show the Account in disaster relief forbearance from October 2024 to March 2025 at minimum.

140.    Further, Defendants' reporting of the Account did not reflect a past-due balance before or after May 2025, and therefore, Plaintiffs could not possibly be 120 or 180 days late in May 2025.

141.    Between January 2026 and March 2026, Plaintiffs repeatedly disputed Equifax's, Experian's, and Trans Union's reporting of the Account, wherein Plaintiffs advised they entered into the disaster forbearance and should not be reported as 120 or 180 days late in May 2025.

142.    Despite Plaintiffs *repeatedly* advising Equifax, Experian, and Trans Union that Plaintiffs were not late on the Account as of May 2025, Experian, Equifax, and TransUnion each continued to report the Account as past-due in May 2025, resulting in the Account being reported as a derogatory, negative, or adverse account in Plaintiffs' credit reports and credit files.

143.    Additionally, Trans Union refused to investigate Plaintiffs' First Dispute

23

and instead falsely asserted that the First Dispute was not authorized by Plaintiffs.

144. As such, Trans Union wholly failed to conduct an investigation or re-investigation in response to Plaintiffs' First Dispute.

145. Similarly, Experian wholly failed to conduct an investigation or re-investigation in response to Plaintiffs' First Dispute.

146. As such, Equifax's, Experian's, and Trans Union's re-investigations were not conducted in such a way as to assure whether information regarding Plaintiffs and the Account was inaccurate, incomplete, and/or materially misleading, and each failed to subsequently update and remove the inaccurate information in Plaintiffs' credit reports and credit files.

147. Such reporting is false and evidences Equifax's, Experian's, and Trans Union's failure to conduct reasonable re-investigations of Plaintiffs' repeated disputes.

148. Equifax's, Experian's, and Trans Union's reinvestigations of Plaintiffs' disputes were not conducted reasonably.

149. Equifax's, Experian's, and Trans Union's reinvestigations merely copied and relied upon the inaccurate information conveyed by Chase.

150. Equifax's, Experian's, and Trans Union's reinvestigations of Plaintiffs' disputes were not conducted in good faith.

151. Equifax's, Experian's, and Trans Union's reinvestigation procedures are unreasonable.

152. Equifax's, Experian's, and Trans Union's re-investigations of Plaintiffs' disputes were not conducted using all information reasonably available to Equifax,

24

Experian, and Trans Union.

153. Equifax's, Experian's, and TransUnion's failure to review and reasonably consider all information received in Plaintiffs' disputes—which clearly showed the alleged balance was created as a result of identity theft and fraud—was done in bad faith.

154. Equifax's, Experian's, and Trans Union's reinvestigations were *per se* deficient by reason of these failures in Equifax's, Experian's, and Trans Union's reinvestigations of Plaintiffs' disputes and the Account.

155. As a result of Equifax's, Experian's, and Trans Union's conduct, actions, and inactions, Plaintiffs were denied credit, suffered damage to their credit reputations and credit worthiness, were deterred from making further credit applications as they believed they would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage their credit score with futile credit inquires, and Plaintiffs were each continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

156. Equifax's, Experian's, and TransUnion's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiffs as stated herein.

157. Equifax's, Experian's, and TransUnion's actions in violation of 15 United States Code, Section 1681i *et seq.*, constitute negligent or willful

noncompliance—or both—with the FCRA, and entitle Plaintiffs to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

<h2 style="text-align:center">PRAYER FOR RELIEF</h2>

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiffs respectfully request an entry of:

a.    Judgment against Chase, Equifax, Experian, and Trans Union for maximum statutory damages for violations of the FCRA;

b.    Actual damages in an amount to be determined at trial;

c.    Compensatory damages in an amount to be determined at trial;

d.    Punitive damages in an amount to be determined at trial;

e.    An award of attorney's fees and costs; and

f.    Any other such relief the Court may deem proper.

<h2 style="text-align:center">DEMAND FOR JURY TRIAL</h2>

Plaintiffs hereby demand a trial by jury on all issues triable by right.

<h2 style="text-align:center">SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE</h2>

Plaintiffs hereby give notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

*/s/ Aaron M. Swift*

26

**Aaron M. Swift, Esq., FBN 0093088**
Jordan T. Isringhaus, Esq., FBN 0091487
Sean E. McEleney, Esq., FBN 125561
Jessica A. Cowan, Esq., FBN 1069016
11300 4th Street N., Suite 260
St. Petersburg, FL 33716
Phone: (727) 755-3676
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
smceleney@swift-law.com
jcowan@swift-law.com
jmurphy@swift-law.com
*Counsel for Plaintiffs*